UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF WASHINGTON
AT SEATTLE

TERRENCE J.,

                 Plaintiff,

v.

ANDREW M. SAUL,
Commissioner of Social Security,

                 Defendant.

CASE NO. C19-5700-MAT

ORDER RE: SOCIAL SECURITY DISABILITY APPEAL

Plaintiff proceeds through counsel in his appeal of a final decision of the Commissioner of the Social Security Administration (Commissioner). The Commissioner denied plaintiff's applications for Disability Insurance Benefits (DIB) and Supplemental Security Income (SSI) after a hearing before an Administrative Law Judge (ALJ). Having considered the ALJ's decision, the administrative record (AR), and all memoranda of record, this matter is AFFIRMED.

## **FACTS AND PROCEDURAL HISTORY**

Plaintiff was born on XXXX, 1971.[1] He completed high school and some college and previously worked as an operating engineer/heavy equipment, warehouse worker, stock clerk, construction laborer, window shade cutter, shipping and receiving supervisor, and hand packager. (AR 178, 180-91.)

---

[1] Dates of birth must be redacted to the year. Fed. R. Civ. P. 5.2(a)(2) and LCR 5.2(a)(1).

ORDER
PAGE - 1

Plaintiff protectively filed DIB and SSI applications on April 21, 2016, alleging disability beginning April 21, 2016. (AR 383, 389.) The applications were denied at the initial level and on reconsideration. ALJ Allen Erickson held a hearing on March 29, 2018, taking testimony from plaintiff and a vocational expert (VE). (AR 171-226.) On July 26, 2018, the ALJ issued a decision finding plaintiff not disabled. (AR 57-69.)

Plaintiff timely appealed. The Appeals Council denied plaintiff's request for review on June 26, 2019 (AR 1-6), making the ALJ's decision the final decision of the Commissioner. Plaintiff appealed this final decision of the Commissioner to this Court.

## JURISDICTION

The Court has jurisdiction to review the ALJ's decision pursuant to 42 U.S.C. § 405(g).

## DISCUSSION

The Commissioner follows a five-step sequential evaluation process for determining whether a claimant is disabled. *See* 20 C.F.R. §§ 404.1520, 416.920 (2000). At step one, it must be determined whether the claimant is gainfully employed. The ALJ found plaintiff had no substantial gainful activity since the alleged onset date.

At step two, it must be determined whether a claimant suffers from a severe impairment. The ALJ found severe plaintiff's degenerative disc disease of the lumbar spine with herniated nucleus pulposus; bipolar disorder with psychotic features; and post-traumatic stress disorder (PTSD). He found other impairments non-severe, including thoracic spine scoliosis; right rib deformity; right wrist tendonitis, status-post surgery; status-post meningitis; alcohol use; methamphetamine use; opiate use; and Hepatitis C. (AR 59-60.) He also found diagnoses of obsessive compulsive disorder and schizoaffective disorder better addressed by the bipolar and PTSD diagnoses, and plaintiff's alleged hearing loss not a medically determinable impairment.

Step three asks whether a claimant's impairments meet or equal a listed impairment. The ALJ found plaintiff's impairments did not meet or equal the criteria of a listed impairment.

If a claimant's impairments do not meet or equal a listing, the Commissioner must assess residual functional capacity (RFC) and determine at step four whether the claimant has demonstrated an inability to perform past relevant work. The ALJ found plaintiff able to perform light work, with the following limitations: can occasionally climb ladders, ropes, and scaffolds, crawl, and have exposure to vibrations and extreme cold; can understand, remember, and apply short, simple instructions; able to perform routine tasks, but not in a fast-paced, production type environment; able to make simple decisions; and can have occasional interaction with the general public and co-workers. With that assessment, the ALJ found plaintiff unable to perform his past relevant work.

If a claimant demonstrates an inability to perform past relevant work, or has no past relevant work, the burden shifts to the Commissioner to demonstrate at step five that the claimant retains the capacity to make an adjustment to work that exists in significant levels in the national economy. With the assistance of the VE, the ALJ found plaintiff capable of performing other jobs, such as a housekeeper, small products assembler, and marker.

This Court's review of the ALJ's decision is limited to whether the decision is in accordance with the law and the findings supported by substantial evidence in the record as a whole. *See Penny v. Sullivan*, 2 F.3d 953, 956 (9th Cir. 1993). *Accord Marsh v. Colvin*, 792 F.3d 1170, 1172 (9th Cir. 2015) ("We will set aside a denial of benefits only if the denial is unsupported by substantial evidence in the administrative record or is based on legal error.") Substantial evidence means more than a scintilla, but less than a preponderance; it means such relevant evidence as a reasonable mind might accept as adequate to support a conclusion. *Magallanes v.*

*Bowen*, 881 F.2d 747, 750 (9th Cir. 1989). If there is more than one rational interpretation, one of which supports the ALJ's decision, the Court must uphold that decision. *Thomas v. Barnhart*, 278 F.3d 947, 954 (9th Cir. 2002).

Plaintiff argues the ALJ erred in failing to provide sufficient reasons for rejecting a medical opinion, in failing to find his right wrist impairment severe, and in rejecting his subjective claims. He requests remand for further proceedings. The Commissioner argues the ALJ's decision has the support of substantial evidence and should be affirmed.

<u>Medical Opinions</u>

In general, more weight should be given to the opinion of a treating doctor than to a non-treating doctor, and more weight to the opinion of an examining doctor than to a non-examining doctor. *Lester v. Chater*, 81 F.3d 821, 830 (9th Cir. 1996). Where not contradicted by another doctor, a treating or examining doctor's opinion may be rejected only for "'clear and convincing'" reasons. *Id*. (quoted source omitted). Where contradicted, the ALJ must provide "'specific and legitimate reasons' supported by substantial evidence in the record for so doing." *Id*. at 830-31 (quoted source omitted).

Plaintiff argues the ALJ failed to provide the necessary specific and legitimate reasons for rejecting the August 6, 2016 opinion of examining physician Rebecca Speckman, M.D. (AR 660-64.) Dr. Speckman reviewed 2015 lumbar and thoracic spine x-rays, a May 18, 2016 record from Mary Biggerstaff, ARNP, and an April 2016 x-ray of the right wrist. (AR 660.) Plaintiff reported right wrist pain and swelling with an onset in fall 2015: "He was previously working in shipping and his job would require him to repeatedly roll items, and this was exacerbating and was the reason that he had to stop work." (*Id*.) He reported longstanding back pain and right leg numbness of more than a year. (AR 661.)

On examination, Dr. Speckman found 4/5 grip strength on the right and 5/5 on the left, normal gait, the ability to heel and toe walk, more difficult on the right, intact tandem walking, the ability to perform a full squat, and straight leg raise test positive on the right. (AR 662.) Plaintiff had full strength bilaterally symmetrical in the upper and lower extremities, with the exception of 4/5 in the right wrist and right great toe extension. His range of motion (ROM) was normal except for slight scoliosis of thoracic spine, wrist with right passive ROM of ten degrees extension and flexion and five degrees of ulnar and radial deviation. Neurologically, he had decreased sensation on a right S1 distribution. (AR 663.) His right wrist was "visibly swollen and with a palpable effusion." (*Id.*) There was no erythema or warmth, but right wrist ROM was decreased with passive and active movement and he reported deep wrist pain with movement in any direction.

Dr. Speckman diagnosed right wrist swelling and objectively reduced ROM "severely so on examination." (*Id.*) While the etiology was not fully known, there was obvious reduced ROM and swelling, as had been similarly reported by a nurse practitioner in 2016. Differential diagnosis included inflammatory arthropathy, soft tissue injury, "[h]owever, even without a final diagnosis there are clear limitations at this time." (*Id.*) Dr. Speckman recommended an MRI of the right wrist, aspiration with analysis of joint fluid, and blood tests. She also diagnosed thoracic scoliosis, mild, confirmed by x-ray, with corresponding mid back pain and the problem not likely to resolve,[2] and a history and examination consistent with objective finding of decreased Achilles reflex on the right and corresponding weakness and sensory impairment. Dr. Speckman assessed plaintiff as limited to maximum standing/walking with normal breaks for at least a two hour period; maximum sitting of at least six hours; maximum lifting and carrying twenty pounds occasionally

---

[2] The July 24, 2015 x-rays were negative for the lumbar spine, and, for the thoracic spine, showed ten degree scoliosis at T3-T4, no fracture, dislocation, or paraspinal soft tissue abnormality, and normal alignment. (AR 642, 644.)

ORDER
PAGE - 5

and ten pounds frequently; able to occasionally climb, balance, kneel, crouch and crawl, only occasionally reach, handle, finger and feel with the right hand, and limited in working at heights and extremes of temperature. (AR 663-64.)

Non-examining State agency physician Donna LaVallie, D.O. offered an opinion on February 7, 2017. She opined plaintiff could lift and/or carry twenty pounds occasionally and ten pounds frequently, and occasionally push/pull the same amounts with the right upper extremity; stand and/or walk and sit about six hours in an eight-hour workday; could never climb ladders/ropes/scaffolds, occasionally stoop and crawl, and frequently kneel and crouch; could frequently handle on the right; and should avoid concentrated exposure to extreme cold, vibration, and hazards. (AR 268-70, 284-86.)

The ALJ accorded Dr. Speckman's opinion some weight as generally consistent with her findings, but found the evidence did not support the limitations in standing/walking or in relation to the right wrist. (AR 65.) "At the time of the examination, the claimant was experiencing right wrist tendonitis, but imaging was normal and the physical examination findings from May 2016 were unremarkable." (*Id*. (citing AR 633 (April 9, 2016 x-ray with indication of moderate pain and swelling and findings of no fracture or dislocations, joint spaces maintained, and carpal alignment normal); AR 648 (May 18, 2016 wrist examination by ARNP Biggerstaff showed normal skin, soft tissue and bony appearance, no gross edema or evidence of acute injury, mild tenderness on lateral wrist to palpation, and full active and passive ROM of wrist flexors, extensors).) While he had diminished grip strength on the right, Dr. Speckman noted plaintiff was able to make a full fist, pick up a coin, and manipulate clothing. (AR 662.) He was also able to walk thirty feet and get on and off the examination table without assistance, had normal gait and station, performed a full squat, and heal toe walked with some difficulty. (*Id*.) He had full strength

in the lower extremities, full ROM in the back, intact deep tendon reflexes, and slightly diminished sensation in the right lower extremities. (AR 663.) The ALJ found these findings to suggest some limitations, but not to the extent proposed by Dr. Speckman.

The ALJ accorded Dr. LaVallie's opinion great weight to the extent consistent with the assessed RFC. (AR 66.) He found the opinion generally consistent with the objective medical evidence of record, "including the imaging of the lumbar spine which revealed no more than moderate bilateral recess stenosis at the L4-S1 levels." (*Id.* (citing AR 734 (reflecting Brian Luliano, M.D.'s September 8, 2017 review of thoracic and lumbar x-rays; Dr. Luliano favored conservative treatment and requested an epidural steroid injection)).) Plaintiff subsequently reported epidural steroid injections provided some relief. (AR 763 (dated January 29, 2018).) He also reported his ability to complete activities of daily living. (AR 465-72 (September 29, 2016 function report).) The ALJ had earlier, and as discussed below, found plaintiff's right wrist tendonitis was not a severe impairment. (AR 59-60.)

Plaintiff notes Drs. Speckman and LaVallie agreed he had limitations in his right wrist. He argues that giving greater weight to the examining doctor's opinion was the only reasonable way to resolve the contradiction. He notes the ALJ rejected Dr. Speckman's two-hour standing/walking limitation based on some this physician's own findings, such as his ability to walk thirty feet and perform a full squat, while leaving out her other findings, such as his positive straight leg raise and decreased Achilles reflex. He argues the ALJ unreasonably relied on his own lay understanding of clinical findings, rather than the physician's expertise.

Plaintiff also rejects the ALJ's depiction of his right wrist limitations as temporary. (*See* AR 65 ("*At the time of the examination* [by Dr. Speckman], the claimant was experiencing right wrist tendonitis, . . . .") (emphasis added).) He contends the record reflects right wrist findings

lasting several years and imposing limitations for more than the required twelve-month duration. 20 C.F.R. §§ 404.1505, 416.905 (to meet definition of disability, claimant must have a severe impairment preventing work; impairment must have lasted or be expected to last at least twelve months). He points to three 2016 treatment notes from ARNP Biggerstaff documenting his ongoing condition and including the diagnosis of likely tendonitis, possible carpal tunnel (AR 650-51 (April 15, 2016: reporting pain and swelling "for about six weeks"); AR 647-48 (May, 18, 2016: continued "wrist pain for several months"); and AR 697 (December 7, 2016: "His wrist has been hurting about a year.")), and contends ARNP Anneliese Kraiger found right wrist tendonitis on numerous occasions between June 2017 and February 2018 (AR 845, 988, 992, 997, 1001, 1003, 1007). He states that, while ARNP Biggerstaff was not authorized to diagnose as an "unacceptable medical source," *see* 20 C.F.R. §§ 404.1502, 416.902, Dr. Speckman, in August 2016, offered a differential diagnosis and assessed clear limitations even without a final diagnosis (AR 663). He asserts the error relating to his right wrist, back, and leg impairments necessarily impacted the conclusions at steps four and five.

"The ALJ is responsible for resolving conflicts in the medical record." *Carmickle v. Comm'r of SSA*, 533 F.3d 1155, 1164 (9th Cir. 2008). When evidence reasonably supports either confirming or reversing the ALJ's decision, the Court may not substitute its judgment for that of the ALJ. *Tackett v. Apfel*, 180 F.3d 1094, 1098 (9th Cir. 1999). "Where the evidence is susceptible to more than one rational interpretation, it is the ALJ's conclusion that must be upheld." *Morgan v. Commissioner of the SSA*, 169 F.3d 595, 599 (9th Cir. 1999).

The record indicates plaintiff developed right wrist pain while still working and not long before the April 21, 2016 alleged onset date. (*See, e.g.*, AR 650 (April 15, 2016 report of pain and swelling "for about six weeks" and no known injury "but he does work in a seafood processing

plant and does a lot of repetitive motion."); AR 647, 711 (May 18, 2016: "Here to establish care; he continues with R wrist pain for several months, thought to be tendonitis from repetitive motion at work."); *see also* AR 190-94 (plaintiff testified he left his job in April 2016 due to problems that included his wrist; job required putting shrimp in bags and lifting twenty-five pound bags into a machine to be sealed).) However, even then, examinations and imaging were largely unremarkable. (AR 650-51 (April 15, 2016: no erythema or ecchymosis, radial edema, no point tenderness to palpation, normal neurovascular light touch and sensory exam, full active and passive ROM of wrist flexors, extensors, including ulnar and radial deviation; prescribed wrist brace and ibuprofen, and avoid exacerbating work for 2 weeks); AR 631-33 (April 29, 2016, Dr. Normand LeComte: seen for "moderate" right wrist pain, with observations of tenderness, swelling, and limiting ROM; x-ray by Joseph Stengel, D.O., indicated moderate pain and swelling, no fracture or dislocations, joint spaces maintained, carpal alignment normal); AR 648, 712 (May 18, 2016: normal skin, soft tissue and bony appearance, no gross edema or evidence of acute injury, mild tenderness on lateral wrist to palpation, and full active and passive ROM of wrist flexors, extensors).) In May 2016, ARNP Biggerstaff noted plaintiff's report he had not had primary care in many years, was uninsured, and intended to sign up for healthcare. (AR 647-48, 711-12.)

Dr. Speckman conducted her examination in August 2016, finding "clear limitations at this time." (AR 663.) However, by October 10, 2016, when plaintiff sought renewal of State general assistance benefits, ARNP Biggerstaff stated: "He initially made it for wrist pain but he says now that his bipolar disorder is a larger problem." (AR 1014.) While plaintiff complained of wrist pain, ARNP Biggerstaff included no physical findings other than normal gait. (AR 1014-15.) On December 7, 2016, plaintiff reported intermittent, severe wrist pain alleviated by a brace and swelling at times, as well as longstanding, constant, moderate, grinding back pain. (AR 697.) On

examination, ARNP Biggerstaff found normal gait, decreased ROM and pain with back flexion, and pain over the radial side of wrist, no warmth, crepitus, loose bodies or masses, limited active and passive ROM. (AR 699.) She assessed plaintiff as having a chronic back issue and likely tendonitis, and recommended heat, NSAIDs, at least six weeks of physical therapy before any imaging, and use of a brace during the day. (*Id*.)

Physical therapy records dated in February and March 2017 reflect improvement in plaintiff's wrist. (AR 780-801.) Contrary to plaintiff's contention, ARNP Kraiger did not subsequently make any findings of right wrist tendonitis. Kraiger provided psychiatric care and merely included plaintiff's report of this and many other physical impairments in a summary review of diagnoses repeated throughout the treatment notes. (AR 845, 988, 992, 997, 1001, 1003, 1007 (also including plaintiff's report of "near sighted vision issues, lymphomas, asthma as a child, occasional headaches, chronic back and neck pain related to sciatic issues and herniated disks, history of GERD, seasonal allergies, teeth in disrepair, . . . and exposure to a plant called 'devil's club', which he believes has left thorns in his body which migrate throughout his body and protrude through the skin in various places causing him to pick at his skin and causes occasional rash[,]" as well as "history of meningitis, previous head injury after an assault, no known allergies, hepatitis C - referred for treatment.")) The records dated after plaintiff's physical therapy relate to other issues, such as his back and leg, and contain fairly minimal associated findings. (*See, e.g.,* AR 802-05 (February 9, 2017: sciatic leg pain); AR 756-60 (February 13, 2017: back pain, radiating down leg; normal findings on examination except sacroiliac joints on right tender to palpation); AR 775-77 (April 17, 2017: denied stronger medication/narcotics for back pain "as this is a chronic condition and he is already on benzodiazepine."); AR 806-09 (June 13, 2017: back pain); AR 767-69 (July 27, 2017: back pain follow up, MRI denied, completed six weeks physical therapy; muscle

relaxants helping; normal on examination, but positive straight leg raise); AR 748-49, 810-11 (August 3, 2017: lumbar spine MRI impression of small broad-based dorsal disc protrusion L5-S1, contacts the transiting S1 nerve roots and slightly displaces the left S1 nerve root; mild narrowing spinal canal at that level, accompanying sub annular fissure observed, uncertain significance; mild facet arthropathy at L4-L5, with very mild narrowing of left neural foramen); AR 732-34 (September 8, 2017: neurological consultation for back pain; reporting back pain, right leg numbness; found normal bulk, muscle tone, gait, full strength; recommended conservative treatment, including epidural steroid injections); AR 763-66 (January 29, 2018: back pain follow up; injections provided some relief, chronic pain, with numbness and loss of sensation in lower right extremity).) This evidence is further consistent with plaintiff's testimony at hearing that his right wrist issues had largely resolved with treatment. (AR 201-02 (*see supra* at 13-14); *see also* AR 176 (counsel argued plaintiff's claim related primarily to his psychiatric impairments and mentioned only the physical impairment of degenerative disc disease of the lumbar spine).)

An ALJ may reject a doctor's opinion upon finding it inconsistent with the medical record. *Tommasetti v. Astrue*, 533 F.3d 1035, 1041 (9th Cir. 2008). An ALJ may likewise consider discrepancies or contradictions between the opinion and the doctor's own notes or observations. *Bayliss v. Barnhart*, 427 F.3d 1211, 1216 (9th Cir. 2005). An ALJ may also consider evidence of improvement with treatment. *Thomas*, 278 F.3d at 957.

As reflected above, the record contains substantial evidence support for the ALJ's rational interpretation of the evidence, including inconsistencies with the medical record, inconsistencies between the opined degree of limitation and Dr. Speckman's own observations and findings, and evidence of improvement following the opinions of both Dr. Speckman and Dr. LaVallie. Plaintiff does not demonstrate error in the ALJ's consideration of the medical opinion evidence.

## Step Two

At step two, a claimant must make a threshold showing that his medically determinable impairments significantly limit his ability to perform basic work activities. *See Bowen v. Yuckert*, 482 U.S. 137, 145 (1987); 20 C.F.R. §§ 404.1520(c), 416.920(c). "Basic work activities" refers to "the abilities and aptitudes necessary to do most jobs." 20 C.F.R. §§ 404.1522(b), 416.922(b). "An impairment or combination of impairments can be found 'not severe' only if the evidence establishes a slight abnormality that has 'no more than a minimal effect on an individual's ability to work.'" *Smolen v. Chater*, 80 F.3d 1273, 1290 (9th Cir. 1996) (quoting Social Security Ruling (SSR) 85-28). "[T]he step two inquiry is a de minimis screening device to dispose of groundless claims." *Id.* (citing *Bowen*, 482 U.S. at 153-54). An ALJ is also required to consider the "combined effect" of an individual's impairments in considering severity. *Id.* A diagnosis alone is not sufficient to establish a severe impairment. Instead, a claimant must show his medically determinable impairments are severe. 20 C.F.R. §§ 404.1521, 416.921.

The ALJ found plaintiff's right wrist tendonitis not severe. (AR 59.) He reasoned:

> In April 2016, the claimant sought acute treatment for right wrist pain. Imaging at that time did not reveal any evidence of fractures or dislocation. ([AR 633.]) The following month, a physical examination revealed no edema, only mild tenderness, and full range of motion [(ROM)]. ([AR 648].) In December 2016, the claimant had pain in the right wrist with palpitation and limited [ROM]. ([AR 699].) He was counseled that his wrist pain was likely tendonitis. ([*Id.*]) He was prescribed a brace for his wrist, and he was treated with conservative measures. ([*Id.*])

The ALJ concluded this and other impairments did not cause more than minimal effects on plaintiff's functioning and therefore found them non-severe.

Plaintiff notes the ALJ's failure to include Dr. Speckman's findings in this step-two analysis of his wrist impairment. He argues that, whether characterized as tendonitis,

inflammatory arthropathy, carpal tunnel syndrome, or a rheumatological impairment, his wrist impairment did not resolve, limited his basic work activities for more than twelve months, and was therefore severe. He asserts the necessary impact on the determination of his RFC and decision at step five. He also contends the ALJ improperly posed a leading question at hearing about whether or not his wrist impairment was "severe" (Dkt. 20 at 14), stating he would not know the technical meaning of that term as a lay person, and that he, as well as his lay witness, nonetheless noted his wrist pain and need to wear a brace (AR 465, 447).

Plaintiff does not establish error at step two. The ALJ addressed plaintiff's wrist at step two and step four. As discussed above, the ALJ's consideration of the medical evidence associated with plaintiff's wrist impairment is both rational and supported by substantial evidence. The ALJ did not improperly question plaintiff regarding his wrist, as is reflected with consideration of the entirety of the relevant exchange at hearing:

> [Q.] Right wrist, has that been treated?
>
> [A.] Yes.
>
> [Q.] Tell me about it.
>
> [A.] I apparently had very bad tendinitis, and I wasn't sure what I had, and I went through physical therapy for both my wrists and my back. It helped my wrist, but it didn't help my back.
>
> [Q.] Okay. So the wrist is not a severe problem.
>
> [A.] Correct.
>
> [Q.] It has been cleared up in fact, or is it still bothering you a little bit?
>
> [A.] It bothers me a little bit.
>
> [Q.] Are you right-handed?
>
> [A.] No. I'm left-handed.

ORDER
PAGE - 13

[Q.] So your left hand is good to go.

[A.] Yes.

(AR 201-02.) (*See also* AR 697 (in December 2016 plaintiff described his wrist pain as "severe").) Nor do the assertions of plaintiff and the lay witness in function reports completed, respectively, in September and May 2016 undermine the substantial evidence support for the ALJ's conclusions at step two or in the assessment of his RFC at step four.

## Symptom Testimony

The rejection of a claimant's subjective symptom testimony[3] requires the provision of specific, clear, and convincing reasons. *Burrell v. Colvin*, 775 F.3d 1133, 1136-37 (9th Cir. 2014) *See also Lingenfelter v. Astrue*, 504 F.3d 1028, 1036 (9th Cir. 2007). "General findings are insufficient; rather, the ALJ must identify what testimony is not credible and what evidence undermines the claimant's complaints." *Lester*, 81 F.3d at 834. The ALJ in this case found plaintiff's statements concerning the intensity, persistence, and limiting effects of his symptoms not entirely consistent with the medical and other evidence in the record.

The ALJ stated that, while containing evidence of ongoing limitations related to his mental health symptoms, the record also established plaintiff's symptoms improved with regular treatment and medication, as well as sobriety. (AR 63.) In addition, observations of plaintiff throughout the record suggested his ability to function much better than alleged. The ALJ acknowledged plaintiff's endorsement of a variety of symptoms, such as mania and rapid thoughts, his report of a history of traumatic experiences resulting in continued intrusive thoughts, documentation of a history of psychiatric hospitalization, and the fact plaintiff sought treatment, including medication

---

[3] Effective March 28, 2016, the Social Security Administration eliminated the term "credibility" from its policy and clarified the evaluation of a claimant's subjective symptoms is not an examination of character. SSR 16-3p. The Court continues to cite to relevant case law utilizing the term credibility.

ORDER
PAGE - 14

and counseling. He outlined the evidence set forth below as supporting his interpretation of the record as nonetheless showing improvement and greater functioning than alleged. (AR 64-65.)

In May and August 2016, plaintiff presented with appropriate affect and demeanor, normal speech, good insight and judgment, cooperative behavior, and/or good grooming. (AR 648, 668.) In September 2016, he sought acute treatment for suicidal ideation (AR 721-27), he was started on medications for his symptoms the following month, and, by November 2016, he reported medication compliance and improvement (AR 700). In December 2016, he continued to report some improvement with his symptoms and medication and presented as well groomed, with good eye contact, cooperative, with a euthymic mood and effect, normal speech, and intact memory. (AR 694-95.) He performed some serial seven subtractions and had full recall of objects after a brief delay, average math skills, and average ability to pay attention. (AR 695.) Similar findings were noted in February through June 2017. (AR 777, 803, 808, 965, 978-79.)

Plaintiff thereafter participated in both individual and group counseling. (AR 811-1010.) He presented on time for appointments, was attentive, and able to support others in the group. In July 2017, he was noted to be stable and mental status findings were unremarkable. (AR 938.) Similar findings were noted the following month. (AR 931-32.) In October 2017, plaintiff indicated his current medication plan was working well to manage his mood and psychosis. (AR 999.) Objective observations at the time indicated euthymic affect, normal speech, intact thoughts, good hygiene, appropriate behavior, and cooperative, with good eye contact. (AR 98-99.) In December 2017, plaintiff continued to indicate he was doing well. (AR 992.) In January 2018, he was described as having normal mental status, cooperative, alert and oriented, in no acute distress, with normal speech and good judgment. (AR 765.) Later that month, he reported he was manic, but he had not presented as such; he was, in fact, described as having appropriate appearance,

normal behavior, as cooperative, anxious, with normal speech, and appropriate thoughts, and as stable. (AR 857.) In February 2018, he noted a stable mood and managed psychosis. (AR 990.) The ALJ found these records established that plaintiff's symptoms improved with treatment, but accounted for any ongoing cognitive, adaptive, and social limitations resulting from his severe mental impairments in the RFC. (AR 64.)

The ALJ also considered the evidence associated with plaintiff's lower back pain and right lower leg numbness. (*Id*.) A July 2015 x-ray of the lumbar spine did not reveal any abnormalities. (AR 642.) In the August 2016 examination, he was able to walk thirty feet, get on and off the examination table, had normal gait and station, performed a full squat, and heal toe walked with some difficulty. (AR 662.) He had full strength in the lower extremities, full ROM in the back, intact deep tendon reflexes, and slightly diminished sensation in the right lower extremity. (AR 663.) In December 2016, he had decreased ROM in the back and intact sensation, limited ROM, intact reflexes, and decreased sensation in the right lower extremity. (AR 699.) He engaged in physical therapy (AR 756-811) and, while he reported ongoing pain, was denied narcotic medication (AR 777). In February 2017, he had normal ROM, negative straight leg raising, normal muscle tone, intact sensation, and normal gait. (AR 759.) In September 2017, plaintiff underwent a neurosurgical consultation with Dr. Brian Iuliano, who recommended conservative treatment, and found full strength, normal bulk and tone, intact gait, and slightly decreased reflexes on the right. (AR 733-34.) An MRI from that time showed normal alignment of the lumbar spine, but moderate bilateral lateral recess stenosis at the L4-S1 levels. (AR 734.) He received epidural steroid injections in October 2017 and January 2018 and reported they provided him some relief. (AR 740-41, 763.) The ALJ found these findings and reported improvement suggested plaintiff's symptoms are not as limiting as alleged, but included his ongoing complaints of pain and numbness

by limiting him to light work, with additional postural and environmental limitations.

Plaintiff posits that the ALJ should have relied on the interpretative medical opinions in considering the medical evidence, such as the opinion of Dr. Speckman, rather than the ALJ's own interpretation. He asserts he had extreme pain prescriptions causing side effects of drowsiness which the ALJ did not address, and that the prescriptions for Tramadol and Robaxin indicate his treating providers believed his claims. He concedes he did not opt for surgery, but states it is unclear what benefit surgery would provide. Plaintiff further concedes his testimony as to "fairly robust abilities" (Dkt. 20 at 16), including the ability to stand for forty-five minutes, walk for an hour-and-a-half, and sit two hours before having to get up and move (AR 218), and observes that both he and his lay witness noted his wrist pain and need to wear a brace in function reports (AR 465, 447.) Plaintiff contends these limitations are consistent with sedentary work, including the ability to stand/walk for two hours and to use his right hand up to a third of the day, as opined by Dr. Speckman. He asserts the need for further VE testimony given the conflict with the RFC and hypothetical question proffered to the VE.

"While subjective pain testimony cannot be rejected on the sole ground that it is not fully corroborated by objective medical evidence, the medical evidence is still a relevant factor in determining the severity of the claimant's pain and its disabling effects." *Rollins v. Massanari*, 261 F.3d 853, 857 (9th Cir. 2001); SSR 16-3p. An ALJ therefore properly considers whether the medical evidence supports or is consistent with a claimant's allegations. *Id*.; 20 C.F.R. §§ 404.1529(c)(4), 416.929(c)(4) (symptoms are determined to diminish capacity for basic work activities only to the extent the alleged functional limitations and restrictions "can reasonably be accepted as consistent with the objective medical evidence and other evidence.") An ALJ may reject symptom testimony upon finding it contradicted by or inconsistent with the medical record.

ORDER
PAGE - 17

*Carmickle*, 533 F.3d at 1161; *Tonapetyan v. Halter*, 242 F.3d 1144, 1148 (9th Cir. 2001). An ALJ also properly considers evidence associated with treatment, §§ 404.1529(c)(3), 416.929(c)(4); SSR 16-3p, including evidence of effective treatment and conservative treatment, *see Wellington v. Berryhill*, 878 F.3d 867, 876 (9th Cir. 2017) ("[E]vidence of medical treatment successfully relieving symptoms can undermine a claim of disability."); *Tommasetti*, 533 F.3d at 1039-40 (favorable response to conservative treatment undermined allegation of disabling nature of pain); and *Morgan*, 169 F.3d at 599-600 (contrary to plaintiff's claimed lack of improvement, physician reported symptoms improved with use of medication).

The ALJ here rationally interpreted the evidence as contradicting plaintiff's alleged degree of limitation, and as reflecting both effective and conservative treatment of his symptoms. Plaintiff offers a different interpretation, such as that opined by Dr. Speckman. However, the ALJ is responsible for assessing plaintiff's symptom testimony, resolving any conflicts in the testimony, and resolving any ambiguities in the record. *Treichler v. Comm'r of Soc. Sec. Admin.*, 775 F.3d 1090, 1098 (9th Cir. 2014). *See also Sample v. Schweiker*, 694 F.2d 639, 642 (9th Cir. 1982) ("questions of credibility and resolution of conflicts in the testimony are functions solely of the Secretary") (internal quotation marks and citation omitted). The ALJ's interpretation is both rational and supported by substantial evidence.

Also, while medication side-effects should be considered in assessing symptom testimony, 20 C.F.R. §§ 404.1529(c)(3)(iv), 416.929(c)(3)(iv), plaintiff does not establish reversible error in this case. Plaintiff points solely to his report of medication side-effects in the function report he completed in September 2016. (*See* Dkt. 20 at 16 and Dkt. 26 at 7 (citing AR 472).) This report does not alone suffice to establish error where the ALJ provided the necessary specific, clear, and convincing reasons for discounting plaintiff's symptom testimony. *See Thomas*, 278 F.3d at 960

(finding no error in the ALJ's failure to exclude alleged medication side effects where the only evidence of the side effects alleged came from the claimant's own statements to her doctor and her testimony at hearing, no supportive objective evidence was offered, and the ALJ provided the necessary reasons for rejecting the claimant's symptom testimony). *Cf. McCawley v. Astrue*, No. 10–35056, 2011 WL 977823 at *1 (9th Cir. Mar. 21, 2011) (affirming an ALJ's adverse credibility determination based in part on the rejection of the claimant's "serious side effects from her medications because she failed to complain to her treating psychiatrists of such side effects").

## **CONCLUSION**

For the reasons set forth above, this matter is AFFIRMED.

DATED this 10th day of March, 2020.

s/ Mary Alice Theiler
United States Magistrate Judge
